# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

AVERTIUM TENNESSEE, INC.,

    Plaintiff,

    v.

PROTOCALL SERVICES, INC.,

    Defendant.

Case No. _____

## COMPLAINT

Plaintiff Avertium Tennessee, Inc. ("Avertium"), for its Complaint against Defendant ProtoCall Services, Inc. ("ProtoCall"), alleges as follows:

1. This is an action for breach of a written services contract. Defendant ProtoCall Services, Inc. contracted with Plaintiff Avertium Tennessee, Inc. for multi-year managed cybersecurity services running through July 11, 2026. When ProtoCall decided it no longer wanted those services, it attempted to walk away from its payment obligations through an informal email that did not satisfy the contract's negotiated termination and notice requirements. ProtoCall then stopped paying its monthly invoices while Avertium continued to perform and stood ready to perform through the end of the term. As a result of ProtoCall's breach, Avertium has been deprived of $249,145.20 in fees owed under the parties' contract. Avertium brings this action to recover those amounts, together with interest, costs, and all other relief to which it is entitled.

## The Parties

2. Plaintiff Avertium Tennessee, Inc. is a Delaware corporation with its principal place of business at 1431 Centerpoint Blvd, Suite 150, Knoxville, Tennessee 37932.

3. Avertium is a cybersecurity services company that partners with mid-market and enterprise organizations to assess risk, design scalable security programs, and provide ongoing protection that improves both security and compliance.

4. Defendant ProtoCall Services, Inc. is an Oregon corporation with its principal place of business at 621 SW Alder Street, Portland, Oregon 97205.

5. ProtoCall is a provider of specialty telephonic behavioral health services.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Avertium is a citizen of Tennessee and Delaware. ProtoCall is a citizen of Oregon.

7. The Court has personal jurisdiction over ProtoCall because ProtoCall did business in the State of Tennessee by executing contracts with Avertium, to be performed, in part, in Tennessee, and by voluntarily engaging in a years-long course of dealing with Avertium in Tennessee. Additionally, ProtoCall consented to the exclusive jurisdiction of the courts located in Davidson County, Tennessee for any dispute related to the contract at issue here.

8. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Avertium's claims occurred there. Specifically, the parties consented to the exclusive jurisdiction of the courts located in Davidson County for any dispute related to the contract at issue here.

2

## FACTUAL BACKGROUND

### The Parties' Business Relationship and the 2023 SOWs

9. Avertium's relationship with ProtoCall dates to 2016, when Avertium's predecessor, Sword & Shield Enterprise Security, Inc., began performing "professional services" for ProtoCall, including HITRUST certification and network security consulting.

10. In this industry, "professional services" and "managed services" are terms of art. Professional services concern specific projects bounded by a clear start and end date, while managed services are continuous and often multi-year.

11. The parties executed two contracts called "Statements of Work" ("SOWs") in April 2023. The Professional and Managed Services Statement of Work (the "Managed Services SOW") (attached hereto as **Exhibit 1**), was, as relevant here, for managed services, including 24/7 managed security monitoring and threat detection through a LogRhythm SIEM platform, for a 24-month term at a total contract value of $349,648.[1]

12. The Professional Services Statement of Work (the "Professional Services SOW") (attached hereto as **Exhibit 2**) was for professional services, including HITRUST r2 certification assessments, SOC 2 Type 1 and Type 2 audits, identity data mapping and privacy assessments, MARS-E compliance assessments, and implementation and configuration of a GRC platform, for a 24-month term at a total contract value of $515,688.

13. The parties agreed that the Managed Services SOW would be "subject to Avertium Services Terms and Conditions V1, ('the Agreement')," that "[a]ll capitalized terms used, but

_____

[1] The "incident response" services in this SOW (and the MS Change Order discussed below) are considered professional services. However, those services were invoiced separately and are not at issue in this lawsuit. Avertium's claims concern unpaid invoices for managed services only.

not otherwise defined herein, shall have the meanings set forth in the Agreement," and that "[t]his SOW is incorporated by reference into the Agreement."

14. At all relevant times, the Avertium Services Terms and Conditions V1 ("Avertium T&Cs") were publicly available on Avertium's website, at https://www.avertium.com/services-terms-and-conditions-v1. A true and accurate copy of the Avertium T&Cs is attached hereto as **Exhibit 3**.

15. Section 2.0 of the Avertium T&Cs addresses payment terms. It provides in part: "Client will pay fees stated in Order(s) or SOW(s), plus expenses incurred by Avertium with Client's approval ('Fees'). Invoices are payable thirty (30) days after the invoice date, unless different terms are stated in a SOW or Order."

16. Section 9.2 of the Avertium T&Cs addresses termination. Subsection (b) provides as follows, addressing if a client wishes to terminate a SOW for managed services:

> Client may terminate any SOW for managed services due to dissatisfaction with the quality of such Services by providing at least sixty (60) days prior written notice to Avertium, provided that if Avertium resolves Client's dissatisfaction during this sixty (60) day period termination shall not occur. The termination of any SOW for managed services will not absolve the Client of its obligations for any "third-party" software Avertium has acquired at the Clients request and Client will be responsible for those amounts until the underlying agreement expires.

17. Section 10.7 of the Avertium T&Cs addresses notice. It provides:

> All notices given pursuant to this Agreement must be in writing, sent to the addresses below and will be effective: (i) upon receipt if hand delivered; (ii) on the next business day after being sent by email or facsimile; (iii) on the third business day following deposit with the postal service.

> *With respect to Avertium, notices must be delivered to:*

> Avertium LLC

> Attn: Legal Department

1431 Centerpoint Blvd, Suite 150

Knoxville, TN 37932

E-mail: legal@avertium.com

18.    Section 10.4 of the Avertium T&Cs addresses disputes. It provides that "[t]his Agreement is governed by the laws of the State of Tennessee, not including its choice of law rules," and that "[b]oth Parties irrevocably consent to the exclusive jurisdiction of the courts in the State of Tennessee, County of Davidson for any dispute related to this Agreement."

19.    Section 10.4 also provides that "[n]o legal action may be brought by one Party against the other Party more than one (1) year after the event giving rise to the cause of action, except for actions due to non-payment of Fees or violation of Avertium's IP Rights."

20.    This action is for non-payment of fees and thus falls outside the scope of Section 10.4's one-year limitations period.

**The Change Orders**

21.    In June 2023, the parties executed a Change Order (the "2023 PS Change Order") modifying the terms of the Professional Services SOW. A true and accurate copy of the 2023 PS Change Order is attached hereto as **Exhibit 4**.

22.    Specifically, the 2023 PS Change Order replaced the reference to "Eramba platform" in the original Professional Services SOW with the generic term "GRC platform," with no changes to deliverables, term, or pricing.

23.    A Governance, Risk, and Compliance ("GRC") platform is enterprise software that integrates governance structures, risk management processes, and compliance controls into a centralized system to help an organization meet legal and regulatory obligations. It provides a uni-

fied framework for identifying, assessing, and mitigating risks while documenting and demonstrating adherence to applicable statutes, regulations, and internal policies.

24. In March 2024, the parties executed a second no-cost Change Order (the "2024 PS Change Order") modifying the terms of the Professional Services SOW. A true and accurate copy of the 2024 PS Change Order is attached hereto as **Exhibit 5**.

25. Specifically, the 2024 PS Change Order revised the scope of the professional services engagement from FedRAMP readiness and privacy assessments to a HITRUST r2 assessment combined with a StateRAMP assessment under a pilot program administered by the HITRUST Alliance.

26. The 2024 PS Change Order also revised the deliverables of the Professional Services SOW. It replaced the Year 1 deliverables with a "HITRUST r2 Bridge Assessment" and a "HITRUST r2 + StateRAMP Assessment," and the Year 2 deliverables with a "HITRUST r2 Interim + StateRAMP Assessment." The term and pricing of the Professional Services SOW were not changed.

27. This scope change was initiated by ProtoCall after it was invited by the HITRUST Alliance (a widely recognized industry organization that develops and maintains a common security and privacy framework used by healthcare and other regulated industries to certify information protection programs) to participate in the StateRAMP pilot program, which ProtoCall believed would provide a path toward FedRAMP compliance through reciprocity with its existing HITRUST certification.

28. HITRUST represented to both Avertium and ProtoCall that Avertium was qualified to serve as the external assessor for the StateRAMP pilot program.

6

29. After the parties executed the 2024 PS Change Order, HITRUST reversed its position and informed Avertium that Avertium did not have a certification required to provide the StateRAMP assessment—specifically, that the external assessor for the StateRAMP pilot program must be a Third-Party Assessment Organization ("3PAO"), which Avertium was not.

30. Avertium promptly referred ProtoCall to qualified 3PAO firms, and ProtoCall selected MegaPlanIT. Avertium facilitated the transition of ProtoCall receiving these professional services from MegaPlanIT.

31. Because Avertium could no longer deliver the StateRAMP component of the Professional Services SOW, the parties agreed to terminate the Professional Services SOW.

32. ProtoCall chose to convert the remaining value of the Professional Services SOW into an extension and expansion of the Managed Services SOW. In July 2024, the parties executed a Change Order (the "MS Change Order") modifying the terms of the Managed Services SOW to effect these changes. A true and accurate copy of the MS Change Order is attached hereto as **Exhibit 6**.

33. The MS Change Order provided that "the parties agree to terminate [the Professional Services SOW] and all financial obligations of the Client and delivery obligations of Avertium cease."

34. The MS Change Order further provided: "The purpose of this change order is to replace the value associated [with the Professional Services SOW] by extending [the Managed Services SOW] thirteen (13) months and transitioning from Managed LogRhythm to Avertium's Managed XDR for Microsoft."

35. The MS Change Order listed the original task/scope and the revised task/scope as

follows:

| Original Task/Scope | Revised Task/Scope |
|---|---|
| "Managed LogRhythm MTP for up to 1,000 MPS with 90 days hot storage and 80 Pro Agents; and<br>Incident Response Retainer Flex (80 hrs)<br>Incident Response Retainer Flex (80 hrs) with the ability to reallocate unused retainer hours within the term of the SOW" | "Managed XDR for Microsoft for up to 650 endpoints<br>Incident Response Retainer Flex (80 hrs)" |

36. The parties also agreed that the original term of the Managed Services SOW (May 11, 2023, through May 10, 2025) would be "extended thirteen (13) months to 7/11/2026."

37. The parties agreed to an increase in pricing to reflect the additional services being added, "from $14,568.66 to $16,284.00 per month for a total of $390,816.00 for the remainder of the term."

38. The $16,284 monthly fee was comprised of $13,841.40 for Managed XDR for Microsoft services, and a $2,442.60 incident response retainer, which was invoiced separately.

39. The MS Change Order further stated that ProtoCall would be "granted access to Avertium's GRCaaS platform through the end of the term which is 7/11/2026."

40. The MS Change Order also made clear that "[u]nless otherwise stated herein, all other terms and conditions of the original [Managed Services] SOW shall remain in full force and effect." This includes the Avertium T&Cs incorporated by reference into the Managed Services SOW.

41. Exhibit A to the MS Change Order described in detail the services that Avertium would provide to ProtoCall under the parties' revised agreement.

42. Exhibit A listed several "Client Responsibilities," including the following:

Client will promptly obtain and provide to Avertium any required licenses, approvals or consents necessary for Avertium' performance of the services. At a minimum, Avertium requires Client to provide:

- A dedicated Microsoft Azure subscription for Microsoft Sentinel

- Log Analytics Workspace (LAW)

- Necessary Microsoft Defender XDR licensing for all in scope users and systems to be monitored and protected by the Service.

43.     The parties executed the MS Change Order on July 8, 2024.

**The Kerns Email and ProtoCall's Failure to Pay Invoices**

44.     Each of the SOWs and Change Orders discussed above was signed on behalf of ProtoCall by Chris Kerns, ProtoCall's then Director of Information Technology and Information Security Officer.

45.     On September 30, 2024, Kerns sent an email to Avertium employees Matt Ryan and Rob Wille (the "Kerns Email"), stating as follows:

Good Afternoon Matt and Rob,

First, apologies for this coming via an email. The Avertium team has been a huge support factor in Protocall's growth/maturation in the compliance realm and for that, I don't know I could ever fully express the gratitude and appreciation.

Unfortunately, and this is the least fun part of any of my role/s past, present or future, Protocall has decided to give notice regarding termination of the contract, primary reasons being that we have yet to realize the GRC portal, and the recently identified increase in costs for MDR with the move away from LogRythm.

It would be great to check in directly, and I want to make sure I am providing any formal documentation for the termination request etc, so please let me know if you have availability for a call this week or next, and I'll do my best to accommodate.

Thank you!

46.     ProtoCall has since asserted that the Kerns Email terminated the Managed Services SOW.

47. However, the Kerns Email was never sent to the Avertium Legal Department at 1431 Centerpoint Blvd, Suite 150 Knoxville, TN 37932, or the email address legal@avertium.com. Thus, it did not comply with the notice provision in Section 10.7 of the Avertium T&Cs.

48. Because the Kerns Email did not comply with the notice provision in Section 10.7 of the Avertium T&Cs, it did not effect termination of the Managed Services SOW.

49. Additionally, the Kerns Email did not raise "dissatisfaction with the quality" of the managed services provided by Avertium under the Managed Services SOW, pursuant to Section 9.2(b) of the Avertium T&Cs.

50. Even if it did, Avertium cured any alleged dissatisfaction within the 60-day cure period mandated by Section 9.2(b) of the Avertium T&Cs. Specifically, Avertium delivered access to the GRC portal on November 11, 2024, 42 days after the Kerns Email was sent.

51. ProtoCall's conduct after the Kerns Email was sent is inconsistent with a terminated agreement. ProtoCall participated in meetings and discussions with Avertium well into December 2024, regarding exploring cost-saving options and proposing a multi-vendor coexistence model.

52. Meanwhile, Avertium continued to uphold its end of the Managed Services SOW after the Kerns Email was sent. Avertium delivered the GRC solution to ProtoCall on November 11, 2024, in accordance with the scope of the Managed Services SOW, as modified by the MS Change Order.

53. Avertium also sent a detailed response on October 16, 2024, rejecting ProtoCall's assertion that the Kerns Email effected termination of the Managed Services SOW, and several follow-ups.

54. ProtoCall eventually stopped responding, and stopped paying its monthly invoices for managed services. ProtoCall ceased payment after December 2024.

55. Avertium continued following up with ProtoCall regarding the unpaid invoices for managed services and continued its performance until July 11, 2026, the end of the term, as it was obligated to do under the Managed Services SOW.

56. The Managed Services SOW remained in full force and effect through July 11, 2026. ProtoCall's obligation to pay monthly fees continued unabated.

57. ProtoCall owes Avertium $249,145.20 in unpaid invoices under the Managed Services SOW, as modified by the MS Change Order. This amounts to 18 months of unpaid invoices in the amount of $13,841.40 for Managed XDR for Microsoft services.

58. Avertium made multiple good-faith efforts to resolve this dispute before filing this lawsuit. The parties participated in pre-suit mediation through JAMS on July 8, 2026. The mediation was unsuccessful.

## COUNT I
### Breach of Contract

59. Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

60. Avertium and ProtoCall entered into the Managed Services SOW, which incorporated the Avertium T&Cs, and which constitutes a valid and enforceable contract (the "Agreement").

61. Avertium and ProtoCall entered into the MS Change Order, a valid and enforceable contract that modified the terms of the Agreement.

11

62. ProtoCall breached the Agreement by failing and refusing to pay the monthly service fees for managed services, beginning in January 2025.

63. ProtoCall's attempted termination of the Agreement was invalid and ineffective because: (a) the notice was not sent to the contractual notice address required by Section 10.7 of the Avertium T&Cs; (b) the notice did not invoke Section 9.2(b); (c) the stated reasons do not constitute dissatisfaction with service quality; (e) even if the stated reasons did constitute dissatisfaction with service quality, Avertium cured the issue within the 60-day cure period; and (d) managed services may not be terminated for convenience under the Avertium T&Cs.

64. The Agreement remained in full force and effect through July 11, 2026. ProtoCall's obligation to pay monthly fees continued unabated.

65. As a direct and proximate result of ProtoCall's breach, Avertium has suffered damages in the amount of $249,145.20 in unpaid service fees, or such greater amount as may be proven at trial.

## COUNT II
### Unjust Enrichment
### (In the alternative)

66. Plaintiff restates and incorporates by reference the allegations contained in the preceding paragraphs of this complaint.

67. Avertium delivered valuable services to ProtoCall.

68. ProtoCall accepted and received the benefit of the services.

69. Avertium has not been fully compensated for the benefit it conferred on ProtoCall.

70. It would be inequitable and unjust for ProtoCall to retain the benefit and value of Avertium's services without paying for the benefits and value it received.

## Prayer for Relief

WHEREFORE, Plaintiff Avertium Tennessee, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant ProtoCall Services, Inc. as follows:

A. Awarding Avertium damages in the amount of $249,145.20 in unpaid service fees, or such amount as may be proven at trial;

B. Awarding Avertium pre-judgment and post-judgment interest at the applicable legal rate;

C. Awarding Avertium such termination fees and liquidated damages as it is entitled to under the Agreement;

D. Awarding Avertium costs of this action;

E. Awarding Avertium such other and further relief as this Court deems just and proper.

Date: July 24, 2026

Respectfully submitted,

AVERTIUM TENNESSEE, INC.

/s/ *Benjamin S. Morrell*

Benjamin S. Morrell (TBPR No. 35480)
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, IL 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4011
bmorrell@taftlaw.com

*Counsel for Plaintiff*