# Exhibit 3

# Avertium Services | Terms and Conditions

**1.0 Section left intentionally blank**

**2.0 PAYMENTTERMS.**

Client will pay fees stated in Order(s) or SOW(s), plus expenses incurred by Avertium with Client's approval ("Fees"). Invoices are payable thirty (30) days after the invoice date, unless different terms are stated in a SOW or Order. If payment is late, Avertium may suspend Services until paid in full. Client shall pay any applicable VAT, other taxes or duties arising out of this Agreement other than Avertium's own payroll and income taxes.

**3.0 OBLIGATIONS**

**3.1 Client Obligations**

Client must: (a) provide and maintain its hardware, software, connectivity and other items Client needs to receive Services, and if Client modifies network configurations for Services (e.g., to allow penetration testing) Client is responsible for restoring them to secure configuration; (b) provide access to premises, personnel, equipment and other resources of Client and its suppliers that Avertium needs to perform the Services, including a dedicated Client contact and appropriate workspace for onsite Services; (c) accurately identify all network resources to be tested (such as IP addresses), and obtain consent from third parties (such as Client's cloud or hosting providers) for Avertium to test their resources; (d) provide Avertium with data or information that Avertium needs to perform the Services, as requested ("**Client Items**"), and; (e) comply with the terms and conditions of any third-party product or service if Client purchases such items through Avertium. Avertium will be excused from delay or failure to perform Services if caused by Client's failure to provide items described in the previous sentence.

**3.2 Avertium Obligations**

If any Avertium user IDs, tokens, passwords, digital signatures, or policies are needed for Client to receive the Services, Avertium shall provide these to Such items are subject to the same terms and conditions that apply to the Services and Avertium Items.

**4.0 INTELLECTUAL PROPERTY**

**4.1 Work Product; License to Avertium Items**

Client owns content created by Avertium which shows the results of the Services ("Work Product") that is incorporated into Deliverables, including all copyright, patent, trademark, trade secret and other rights ("IP Rights") in such Work Product. If any Avertium Items as defined in 4.2 below are incorporated into Deliverables, then Avertium grants Client a nonexclusive, royalty free United States license to: (a) use such Avertium Items as part of the Deliverables into which they are incorporated for Client's internal review, and; (b) share these Avertium Items with its Representatives as Confidential Information pursuant to Section 5.2 below.

**4.2 Avertium Intellectual Proper; License to Client Items**

All ideas, know-how, inventions, data, managed services logs, code, software, communications, reports, templates, Deliverables or other work (but not Work Product) that are used, conceived,

made or developed by Avertium, and all Services, are "Avertium Items." Except for the license granted to Client to use Avertium Items incorporated into Deliverables under Section 4.1, the Avertium Items and all IP Rights in them are owned by Avertium. For Services that are managed services, Avertium grants Client a limited, nonexclusive, royalty free United States license to use these Services in the manner described in the applicable SOW or Order (which may include limits on users or seats). If Client provides any Client Items to Avertium, Client grants Avertium a non-exclusive, royalty-free license to use, reproduce, and adapt such Client Items only to the extent needed to provide the Services or Deliverables to Client.

## 4.3 Restrictions

Client agrees not to: (i) resell, lease, loan or otherwise share the Services with third parties, whether on a timesharing, service bureau, ASP or other basis; (ii) modify, reverse engineer or try to gain unauthorized access to the Services, or alter any software or equipment available via the If an Order or SOW grants Client a license to use Avertium or third party software as part of the Services, then: (x) access to such software is subject to restrictions established by Avertium or its owner; (y) access is limited solely to use of the Services and; (z) Avertium may monitor and record data concerning use of the software to track performance standards, system security and compliance with this Agreement. Client shall adopt reasonable means to prevent violation of this Section 4.4 by its users, and promptly notify Avertium if any violation occurs.

## 4.4 Infringement Remedies

If an IP Claim (as defined in Section 7.2 below) is filed (or in Avertium's opinion is likely to occur), Avertium may, at its option, obtain the right for Client to continue to use Services and Deliverables, substitute other work with similar capabilities and/or performance, modify Services and Deliverables so that they are no longer infringing, or terminate this Agreement and affected SOWS or Orders. If Avertium elects termination, Avertium shall refund Client any pre-paid Fees for the terminated Services and Deliverables, pro-rated over the remaining term of the applicable SOW or Order. THIS SECTION 4.4 (IN ADDITION TO INDEMNIFICATION IF APPLICABLE UNDER SECTION 2) STATES CLIENT'S EXCLUSIVE REMEDY FOR ANY ALLEGATION THAT SERVICES OR DELIVERABLES INFRINGE THIRD PARTY IP RIGHTS.

## 5.0 CONFIDENTIALITY

## 5.1 General

Each Party ("**Recipient**") may receive Confidential Information from the other Party ("**Discloser**"). "**Confidential Information**" means information in any form that Discloser designates as confidential to the Recipient or which, due to the type of information or circumstances surrounding disclosure, a reasonable person would treat as confidential. Confidential Information shall not include information that: (i) is or becomes part of the public domain by any means (except a disclosure by Recipient that violates this Agreement); (ii) was previously known to Recipient without an obligation of confidentiality; (iii) is independently developed by Recipient without use of Discloser's Confidential Information; or (iv) is rightfully obtained by Recipient from third parties that have no obligation of confidentiality to Discloser. Without limiting the previous sentence, the terms of this Agreement, all SOWs and Orders are Confidential Information, all Services and Avertium Items are Confidential Information of Avertium, and Work Product is the Confidential Information of Client. Upon Discloser's written request, Recipient shall return or destroy Discloser's Confidential Information and any copies or extracts, provided that Recipient may keep information needed to comply with its document retention policies or applicable law if Recipient continues to protect it as required by this Section 5.

## 5.2 Restrictions on Use

Recipient shall not disclose Confidential Information to any non-Party, provided that Client as Recipient may disclose Avertium Items within Deliverables (if identified as confidential and proprietary) to its own agents, subcontractors, consultants, counsel, accountants and advisors ("**Representatives**"), in each case who are bound by confidentiality restrictions as restrictive as those of this Agreement. Recipient shall take the same degree of care that it uses with its own confidential information (but not less than reasonable care) to protect the Discloser's Confidential Information from unauthorized use, disclosure, publication or dissemination.

## 5.3 Exceptions

Recipient may disclose Discloser's Confidential Information to the extent required: (i) by applicable law or regulation; (ii) by a subpoena or court order; or (iii) to be included in a regulatory report or audit. Recipient shall, however, give the Discloser prompt written notice of such requirement prior to disclosure and reasonable assistance (at Discloser's expense) in obtaining an order protecting the Confidential Information.

## 6.0 LIMITED WARRANTIES

## 6.1 General

Each Party represents and warrants that it: (i) is duly organized and in good standing; and (ii) has the authority to sign, and perform its obligations under, this Avertium represents that it will perform the Services in a professional and workmanlike manner. If Client notifies Avertium in writing within thirty (30) days after performance of Services that such Services do not conform to the warranty described in the previous sentence, then Avertium shall : (i) re-perform the non-conforming Services; or (ii) refund to Client that portion of the Fees that represent the non-conforming Services. The remedy set forth in the previous sentence is Client's sole and exclusive remedy for breach of this warranty. Client represents that Client Items and other information provided to Avertium for performance of Services are accurate and complete in all material respects, and that Client has all IP Rights necessary to provide the Client Items to Avertium. Avertium represents that it has all IP Rights necessary to provide the Services and Deliverables to Client.

## 6.2 DISCLAIMER

EXCEPT FOR THE WARRANTIES IN SECTION 6.1, AVERTIUM DISCLAIMS ALL WARRANTIES OF ANY KIND RELATING TO THE SERVICES OR DELIVERABLES, INCLUDING, WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT. AVERTIUM MAKES NO WARRANTIES CONCERNING THIRD PARTY PRODUCTS OR SERVICES, BUT SHALL PASS THROUGH TO CLIENT ANY MANUFACTUER OR DEVELOPER WARRANTIES ON THEM IF PERMITTED BY THE MANUFACTURER OR DEVELOPER.

## 7.0 INDEMIFICATION

## 7.1 General

Avertium and Client (each as "**Indemnitor**") shall defend, indemnify and hold harmless the other Party and its officers, directors, employees, and agents (collectively, "**Indemnitee**,") against any third-party claims, suits or proceedings brought against the Indemnitees (each a "**Claim**"), and amounts payable as judgments or settlements against Indemnitee in such Claims, as well as costs and expenses (including reasonable attorneys' fees and costs) of defending such Claims (collectively, "**Losses**") if due to: (i) the Indemnitor's willful misconduct or gross negligence, or; (ii) bodily injury or loss or damage to tangible property of Indemnitee by the Indemnitor.

## 7.2 Intellectual Property

Avertium (as Indemnitor) shall defend, indemnify and hold harmless Client and its officers, directors, employees, and agents (as Indemnitees) against any Claim brought against Indemnitees alleging that Services or Deliverables infringe a valid United States copyright, trademark or trade secret right (an "**IP Claim**"), and shall pay all Losses incurred by Indemnitees in such IP Claim. Avertium's obligations under this Section 7.2 shall not apply to any IP Claim or Losses that arise from: (i) modifications to Services or Deliverables by any party other than Avertium; (ii) Client's combination of Services or Deliverables with third party products or services; or (iii) Client's use of Services or Deliverables in a manner not permitted by, or which violates, this Agreement, the applicable SOW or Order.

## 7.3 Conditions for Indemnity

As a condition precedent to an Indemnitor's indemnity obligation to an Indemnitee, the Indemnitee must: (i) give the Indemnitor prompt written notice of any Claim; (ii) allow Indemnitor to control, and fully cooperate with Indemnitor in, defense of the Claim, and; (iii) permit Indemnitor to settle any Claim, provided that the Indemnitee's consent is required if any settlement involves an admission of liability or injunctive relief.

## 7.4 Cooperation

If Client asks Avertium, or if Avertium is required by court order, subpoena or legal process, to produce information or witnesses concerning the Services or Deliverables, Avertium may charge Client for its professional time and expense and for the fees of Avertium Client shall pay such items according to the terms of Section 2 of this Agreement. This section does not apply to any suit or claim by Client against Avertium, or any Claim for which Avertium is obligated to indemnify Client under Section 7.1 or 7.2.

## 8.0 LIMITATIONS

## 8.1 LIMITS OF LIABILITY

AVERTIUM SHALL NOT BE LIABLE FOR ANY LOST PROFITS, SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, LOST OR CORRUPTED DATA OR SOFTWARE, LOSS OF USE OF SYSTEM(S) OR NETWORK(S), LOSS OF BUSINESS OPPORTUNITY, BUSINESS INTERRUPTION OR DOWNTIME. IN ADDITION TO THE PREVIOUS SENTENCE, IN NO EVENT SHALL EITHER PARTY'S AGGREGATE LIABILITY TO THE OTHER FOR ALL SUITS, DAMAGES, CLAIMS, LOSSES, OR OTHER OBLIGATIONS OF ANY KIND ARISING UNDER ANY LEGAL THEORY, WHETHER IN TORT, CONTRACT OR OTHERWISE ("LIABILITY") EXCEED THE GREATER OF: (A) ALL MONIES PAID AND PAYABLE BY CLIENT TO AVERTIUM IN THE SIXTY (60) DAYS BEFORE THE CLAIM OF LIABILITY WAS FIRST ASSERTED, OR (B) THE TOTAL MONIES PAID AND PAYABLE BY CLIENT TO AVERTIUM FOR THE SERVICES THAT CAUSED THE LIABILITY IN THE TWELVE (12) MONTHS BEFORE THE CLAIM OF LIABILITY WAS FIRST ASSERTED. THE LIMIT IN THE PREVIOUS SENTENCE DOES NOT APPLY TO EITHER PARTY'S: (X) GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR VIOLATION OF THE OTHER PARTY'S IP RIGHTS, OR (Y) CLIENT'S NONPAYMENT TO AVERTIUM. THE EXISTENCE OF MORE THAN ONE CLAIM OR CAUSE OF ACTION WILL NOT EXPAND THIS LIMIT.

## 8.2 Limitations Inherent to Services

The Services assess in-scope Client resources as described in the SOW or Order, and target the most common/likely weaknesses, vulnerabilities and exploits published in industry standards such as

OWASP Top 10. As a result, a weakness, vulnerability or exploit may not be discovered if it affects an out-of-scope resource or is new, unknown or unlikely. If Services concern the requirements of laws, regulations or standards, Client acknowledges that such Services are not legal services and that resulting Deliverables are not legal advice or a guarantee or assurance of Client's compliance. Although such Services may assist Client in compliance efforts, Client (not Avertium) is ultimately responsible for Client's compliance requirements. Client determines the scope, overall goals and direction of the Services, and must implement any course of action based on their results. If Services are based on configuration of Client's environment as of the start of Services, Avertium shall not be responsible for any effect on Services caused by changes to Client's environment.

## 9.0 TERM AND TERMINATION

### 9.1 Term

This Agreement begins on the Effective Date and remains in effect until terminated as permitted by this Section 9 (the "**Term**"). If the initial term of any SOW for managed services has expired, the term of the that SOW will automatically extend 90-days at the then current pricing provided the Party's are in the process of negotiating a renewal agreement. The preceding language is intended only to assure the Client has uninterrupted services during any period of re- negotiation of a SOW for managed services.

### 9.2 Termination

(a) Client may terminate any SOW for professional (not managed) services for convenience at any time by providing at least seven (7) days prior written notice to Avertium.

(b) Client may terminate any SOW for managed services due to dissatisfaction with the quality of such Services by providing at least sixty (60) days prior written notice to Avertium, provided that if Avertium resolves Client's dissatisfaction during this sixty (60) day period termination shall not occur. The termination of any SOW for managed services will not absolve the Client of its obligations for any "third-party" software Avertium has acquired at the Clients request and Client will be responsible for those amounts until the underlying agreement expires.

(c) Avertium may terminate this Agreement as permitted by Section 4 by providing at least seven (7) days prior written notice to Client.

(d) Either Party may terminate this Agreement: (i) if the other Party commits a material breach of this Agreement and does not cure such breach within such thirty (30) days after the non-breaching Party sends notice of the material breach; or (ii) immediately on written notice if the other Party files any bankruptcy or similar action or terminates or suspends its business operations.

### 9.3 Survival

Upon termination of this Agreement for any reason, the following Sections shall survive: 2(ii), 2(iii), 0, 5.0, 6.2, 7.0, 8.0, 9.3, 9.4, 10 and 11.

### 9.4 Effect of Termination

Termination of this Agreement terminate all SOWs and Orders in Upon termination, Client shall pay Avertium for all Services and Deliverables provided before the effective date of termination, as well as any ongoing fees payable to third parties for their products or services that were obtained with Client consent by Avertium, even if payable after termination (Avertium may invoice all such fees in a lump sum at termination). Client shall return any equipment or hardware provided by Avertium (except equipment purchased by Client). If such equipment is not promptly returned,

Client shall pay Avertium the then-current costs to replace such equipment. If the SOW is related to a managed services (also referred to as "MS") contract the following termination fees will apply as well: (i) the return of any discounts given under the agreement related to the length of the contract, (ii) a cancellation fee equal to three-months of service plus a prorated amount equal to any extended term discounts that were granted for each terminated SOW. Termination amounts for (ii) and (iii) above will not be charged if termination occurs due to Avertium's material breach under 9.2(b) or 9.2(d). Client agrees that the termination fees described in the previous sentence are liquidated damages, and not a penalty.

## 10.0 MICELLANEOUS

### 10.1 Assignment

Client may not assign this Agreement without the prior written approval of Avertium, which shall not be unreasonably Avertium may assign this Agreement, in whole or in part, to Avertium's successor pursuant to a change in control, reorganization, or transfer or sale of its ownership or assets.

### 10.2 Waivers

No waiver of any provision of this Agreement shall be effective unless in writing and signed by the Party granting the A waiver of one provision shall not be construed as a waiver of any succeeding breach of such provision or the waiver of the provision itself.

### 10.3 No Third-Party Beneficiaries

The terms of this Agreement are intended solely for each Party and its respective successors and assigns. No third-party beneficiary rights are conferred upon any other person. Without limiting the foregoing, no third party shall be entitled to rely on Services, Deliverables, Avertium Items or Work Product for any purpose.

### 10.4 Disputes

(a) This Agreement is governed by the laws of the State of Tennessee, not including its choice of law rules. Both Parties irrevocably consent to the exclusive jurisdiction of the courts in the State of Tennessee, County of Davidson for any dispute related to this Agreement. No legal action may be brought by one Party against the other Party more than one (1) year after the event giving rise to the cause of action, except for actions due to non-payment of Fees or violation of Avertium's IP Rights. EACH PARTY WAIVES ALL RIGHT TO A JURY TRIAL IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BETWEEN THEM.

(b) The Parties agree that a remedy at law for any breach or attempted breach of Sections 0 or 5.0 may be inadequate, and therefore, either Party may seek injunctive or other equitable relief for any breach or attempted breach of these Sections, in addition to its other rights or remedies at law, in equity or under this Agreement.

### 10.5 Severability

If any provision of this Agreement is deemed unenforceable or invalid under applicable law, such provision shall be changed and interpreted to best accomplish the objectives of the remaining terms.

### 10.6 Force Machine

Neither Party shall be liable for any delay or failure to perform (other than failure to pay Fees) to the extent performance is delayed or made impossible by any cause beyond the control of a Party,

## 10.7 Notices

All notices given pursuant to this Agreement must be in writing, sent to the addresses below and will be effective: (i) upon receipt if hand delivered; (ii) on the next business day after being sent by email or facsimile; (iii) on the third business day following deposit with the postal service.

### *With respect to Avertium, notices must be delivered to:*

Avertium LLC

Attn: Legal Department

1431 Centerpoint Blvd, Suite 150

Knoxville, TN 37932

E-mail: legal@avertium.com

## 10.8 Records and Inspection

[Omitted]

## 10.9 Neutral Construction

This Agreement will be interpreted to have been jointly drafted by the The terms of this Agreement shall not be construed against a Party on the grounds that the Party drafted such term(s).

## 10.10 Non-Solicitation

Client will not hire or attempt to hire any Avertium personnel during the Term of this Agreement and for one (1) year afterwards. If Client violates the previous sentence, Client shall pay Avertium a sum equal to thirty percent (30%) of the last annual salary of the personnel hired by Client. This restriction shall not apply to personnel who respond to publicly available job postings by Client or its agents, but only if Client or its agents do not directly notify such personnel of these postings.

## 10.11 Independent Contractor Relationship

The relationship of Avertium and Client is that of independent contractors. This Agreement is not intended to create a partnership, joint venture, co-ownership or other joint Avertium may employ agents and subcontractors to provide part of the Services.

## 11.0 TERMS SPECIFIC TO MANAGED SERVICES

If Services include managed services, the following terms shall apply solely to such managed services.

## 11.1 Commencement

Unless stated otherwise in the SOW, Services consisting of managed services will begin billing on the date thirty (30) days after the signing of the MS SOW (the "Service Commencement Date"). Such date will be the start date for the billing and the end date will be the number of months defined within the applicable SOW. Client must designate a staff member with authority to make all

management decisions concerning the Services.

## 11.2 Managed Devices

In order to deliver the Services for any applicable SOW that describes managing one or more assets on Client's network, Client must permit Avertium to connect directly to Client devices on the Client's network using an authenticated server in Avertium's secure operations center, and Client must make such connectivity available at all times during the Services. If Avertium access to managed or co-managed devices is unavailable due to failure of Internet, telco, or other resources or services of the Client or its agents or suppliers, Avertium (i) can make no guarantees or assurances with respect to such Services, and (ii) shall have no responsibility or liability for failure to perform or delay in performing its Services.

## 11.3 Additional Requirements

Additional requirements for managed services may also be set forth in a SOW or Order.

## 11.4 Third Party Software, Products, or Services

If the Services require use of third-party software, products or services described in a SOW or Order ("Third-Party Items"), Client shall comply with any licenses, terms or other conditions required by the providers of such Third Party Items ("Third Party Vendors"), whether these are presented to Client in a clickwrap, shrink-wrap or similar agreement, listed in the applicable SOW or Order, or maintained by the Third Party Provider on a web page or hyperlink and referenced by Avertium on its website.

11/4/2022